**A-1 BUSINESS MACHINE COMPANY**

v.

**UNDERWOOD CORPORATION.**

Civ. A. No. 32094.

United States District Court
E. D. Pennsylvania.

March 26, 1963.

Joseph Litt, Markovitz & Stern, Philadelphia, Pa., for plaintiff.

Philip Price, Dechert, Price & Rhoads, Philadelphia, Pa., for defendant.

BODY, District Judge.

Plaintiff, A-1 Business Machine Company, (A-1), is a Philadelphia distributor of business machines of various manufacture. Defendant, Underwood Corporation, (Underwood), is a manufacturer of business machines. This action for treble damages is based on an alleged violation of § 2 of the Sherman Act and § 4 of the Clayton Act. 15 U.S.C. § 2, Act of Congress July 2, 1890, 26 Stat. 209; 15 U.S.C. § 15, Act of Congress Oct. 15, 1914, 38 Stat. 731.

A-1 alleges Underwood's past and continuing violation of the Act with the intent and power to create a monopoly in the sale and distribution of Underwood products in interstate commerce and in particular in the Philadelphia market.

The means alleged include interference with existing business relationships between A-1 and its customers on unspecified occasions and one specific interference with an existing contractual relationship between A-1 and a certain customer. This is claimed to have resulted from Underwood writing a letter to the customer advising it that A-1 was not authorized to sell or service Underwood products. The customer refused to carry out the contract as a result of the letter. On this specific occasion, and in all cases, A-1 lawfully acquired possession of the Underwood product from one of Underwood's exclusive dealers.

This is a motion to dismiss and the test is whether plaintiff can make out a violation of the Act, assuming all that he alleges and all that he could fairly prove factually, is true. F.R.Civ.P., Rule 12(b) (6).

Ever since the case of United States v. E. I. du Pont de Nemours, 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264 (1956), the problem of relevant market has vexed the courts in anti-trust cases. Relevant market was there defined as that portion of our total economy which is threatened by the violation alleged. That is, assuming an anti-competitive course of conduct

or condition, is there a monopoly or a tendency to one in an area of the economy which itself is not in substantial competition, as a whole, with other significant portions of the economy? In United States v. E. I. du Pont de Nemours, supra, the market in which du Pont had a monopoly was found to be the market for cellophane. However, the relevant market was found to be wrapping materials in general. Since there appeared to be significant competition in wrapping products, du Pont did not violate the Act.

In the present case it may readily be seen that the market with which we are concerned is the market in the Philadelphia area for the sale and distribution of business machines in general. The market is not the market for the sale and distribution of Underwood business machines.

It has long been recognized that a manufacturer has a right to a monopoly in the sale and distribution of its own product. Federal Trade Commission v. Sinclair Refining Co., 261 U.S. 463, 43 S.Ct. 450, 67 L.Ed. 746 (1923). This may be and often is accomplished through exclusive dealers or agents. A large part of our economic growth has been due at least in part to this method of doing business. Unless the right to seek and maintain such a monopoly continues a large part of the efficiency of our distributive system may be lost. For example, if Underwood loses the right to choose its own agents or dealers to sell its product, dealers who are unscrupulous or incompetent may damage the manufacturer's good will and trade reputation.

The limits of what the manufacturer may do with regard to the preservation of his product's integrity have not been clearly defined with regard to the antitrust laws. There are relatively clear definitions in tort law which doubtless apply to the instant situation: Cf. Restatement of Torts, § 766. Yet this will not solve the problem unless it be said that every tort is a restraint of trade in violation of the Sherman Act if it is committed under circumstances involving interstate commerce and similar to the facts herein involved.

However, some cases (United States v. Klearflax Linen Looms, Inc., 63 F.Supp. 32 (D.Minn.1945), and The White Motor Company v. United States, 83 S.Ct. 696 (1963). Decided March 4, 1963) indicate that there is a limit to the control a manufacturer may exercise. These cases are distinguishable from this case in that some concert between the manufacturer and distributors was involved as well as a denial of products to the ultimate consumer. Besides the relevant market in Klearflax was clearly limited by the uniqueness of the product and the consequent lack of competition with other products for the same ultimate purpose. Here, as far as we can see, there is no collusion or conspiracy alleged and the products are in open active competition with other similar products. Certainly a fair reading of the complaint shows no possibility of any subsequent proof at trial of conspiracy or uniqueness of product.

Even though the methods of securing and making more firm its own self-interest which have been allegedly used by Underwood may be reprehensible, nevertheless, this alleged wrongful method alone does not constitute a violation of the Sherman Act. If there were allegations of monopolization of the entire market for the sale and distribution of business machines generally we would have a different case. In such a case the method used might become important as bearing on the likelihood of an unlawful monopoly resulting or on the existence of a tendency toward an unlawful monopoly. In the instant circumstances the degree of wrongful method cannot alone control.

This is not a case of boycott by concerted action involving the products of others (Fashion Originators Guild of America v. Federal Trade Commission, 114 F.2d 80 (2d Circ. 1940, affirmed 312 U.S. 457, 61 S.Ct. 703, 85 L.Ed. 949 (1941)); nor is Underwood in direct competition with plaintiff causing a lessening of competition in distribution gen-

**38**

erally. United States v. Klearflax Linen Looms, Inc., supra.

█ Under any set of facts plaintiff could fairly prove in support of its allegations, Underwood has not done acts sufficient to constitute a violation of § 2 of the Sherman Act in the market relevant for consideration.

### ORDER

And now, March 26, 1963, in accordance with the foregoing Opinion, it is ordered that the complaint be and the same is hereby dismissed for failure to state a cause of action upon which relief can be granted.