**E. A. WEINEL CONSTRUCTION CO., a Corporation, and Pipe and Valve Supply Co., a Corporation, formerly known as E. A. Weinel Supply Co., Plaintiffs,**

v.

**MUELLER CO., a Corporation, Sidener Supply Company, a Corporation, and L. E. Sidener, Defendants.**

**Civ. No. 67–72.**

United States District Court
E. D. Illinois.

June 28, 1968.

---

Michael A. Katz, Goldenhersh & Goldenhersh, East St. Louis, Mo., for plaintiffs.

Leo Konzen, Lueders, Robertson & Konzen, Granite City, Ill., for defendant Sidener Supply Co.

Richard J. Welsh, Webber, Webber & Welsh, Decatur, Ill., John T. Loughlin, Bell, Boyd, Lloyd, Haddad & Burns, Chicago, Ill., James R. Parham, Pope & Driemeyer, East St. Louis, Ill., for defendant Mueller Co.

## MEMORANDUM AND JUDGMENT

JUERGENS, Chief Judge.

Plaintiffs E. A. Weinel Construction Co., a corporation, and Pipe and Valve Supply Co., a corporation, instituted this action against Mueller Co., a corporation; Sidener Supply Company, a corporation; and L. E. Sidener, under the antitrust laws, namely, Title 15 U.S.C.A. §§ 1, 2 and 15.

Generally stated, the amended complaint alleges that plaintiff Pipe and Valve Supply Co., hereinafter referred to as "Pipe and Valve," is engaged in the business of selling pipe and valve supplies and water hydrants to contractors for installation by the contractors and that Sidener Supply Company, hereinafter referred to as "Sidener," was at all times pertinent engaged in substantially the same type of business as Pipe and Valve and that L. E. Sidener is president of Sidener Supply Company; that defendant Mueller Co. is a manufacturer of pipe and valve supplies and water hydrants sold by Pipe and Valve and by Sidener; that Mueller produces a certain type of water hydrant and pipe and valve supply line which is exclusive to defendant Mueller; that for nine years prior to 1964 Pipe and Valve purchased and continued to purchase substantial quantities of water hydrants and pipe and valve supplies from Mueller; that Pipe and Valve has sold the same to various customers and has at all times paid the agreed price; that Sidener at all times mentioned also purchased and continues to purchase pipe and valve supplies and water hydrants from Mueller; that on January 15, 1964, Mueller, Sidener and L. E. Sidener conspired and confederated together for the purpose of injuring the business of Pipe and Valve by preventing Pipe and Valve from buying at wholesale and thereafter selling to contractors the pipe and valve supplies and water hydrants manufactured by Mueller on the same terms and conditions as theretofore existed between Pipe and Valve and Mueller and on the same terms and conditions as existed between Sidener and Mueller; that Mueller in furtherance of its agreement with Sidener and L. E. Sidener has refused to sell pipe and valve supplies

and water hydrants to Pipe and Valve on the same terms and conditions as theretofore existed and on the same terms and conditions as existed between Sidener and Mueller; that plaintiff was unable to purchase the pipe and valve supplies and water hydrants from Mueller under the same terms and conditions and at the same prices that Pipe and Valve had been able to purchase for over a period of years from Mueller, from the sale of which Pipe and Valve had derived substantial profit; that the agreement was for the purpose of unlawfully interfering with the business activity of Pipe and Valve in the State of Illinois and the marketing and sale of pipe and valve supplies and water hydrants and the free pursuit by Pipe and Valve of its business in the State of Illinois was restricted and prevented in violation of Title 15, § 1; that Pipe and Valve has sustained great loss and damage by virtue of the conspiracies, combinations and acts of defendants and has been caused to lose profits, customs and trade as a result of the conspiracies; that the profits, customs and trade which Pipe and Valve lost by reason of the conspiracies, Sidener and L. E. Sidener intended to gain and did gain; the costs of business transacted by Pipe and Valve increased as a result of the conspiracies and the value of plaintiff's property decreased as a result of the conspiracies; that much of the goods subject to the agreements originated outside the State of Illinois and were shipped from outside of the state via interstate common carriers; that the agreements were effected in whole or in part through the use of the mails and other interstate opportunities; that the agreements, combinations and conspiracies adversely affected the flow of materials from points and places outside Missouri, Illinois and Kansas to points and places inside of each of the states; that by virtue of the foregoing, Pipe and Valve is entitled to recover threefold the damages it sustained, the costs of suit and reasonable attorneys' fees under the provisions of Title 15 U.S.C.A. § 15, for which Pipe and Valve prays damages in the amount of $200,000.00, together with costs of suit and attorneys' fees.

In Count II Pipe and Valve alleges that the purpose of the agreements, arrangements or combinations was to and did create a monopoly in the sale and marketing of pipe and valve supplies and water hydrants manufactured by defendant Mueller in the East St. Louis-Granite City area, in violation of Title 15 U.S.C.A. § 2.

Counts III and IV allege the same causes of action as Counts I and II and are brought by Weinel Construction Co.

Defendants Sidener and L. E. Sidener filed their answer to the amended complaint, wherein they pray that the cause of action be dismissed.

Defendant Mueller filed its answer and subsequently filed its motion for judgment on the pleadings or for summary judgment, alleging in support of its motion that the complaint fails to allege an agreement or agreements which constitute an unreasonable restraint of trade; that the unilateral correction by Mueller Co. of the classification of Pipe and Valve to properly reflect its function as a contractor would not constitute an agreement or a violation of the Sherman Act and that an agreement between Mueller Co. and Sidener to correct the classification of Pipe and Valve would not constitute an unreasonable restraint of trade or a violation of the Sherman Act; that an agreement between Mueller Co. and Sidener designating Sidener as its sole distributor engaging in the stocking function of Mueller products in a certain area would not constitute an unreasonable restraint of trade or a violation of the Sherman Act; that the allegations of the complaint fail to allege any impact on interstate commerce as a result of the alleged conspiracy, nor can any such impact be shown; that Mueller Co.'s decision to sell its product to a customer as a contractor but not as a distributor in a certain area does not con-

stitute an impact upon interstate commerce needed to show a violation of the Sherman Act; that the complaint fails to allege monopolization or attempted monopolization of any relevant market other than that of the goods and products of Mueller Co., and that a monopoly by Mueller Co. on the sale and marketing of Mueller Co. products by Mueller Co. or Sidener does not constitute a violation of the Sherman Act; that the complaint fails to allege any injury caused as a direct result of the alleged illegal activity of Mueller Co.

The factual background, as established by the depositions and affidavits accompanying the pleadings, show that Mueller Co. is a manufacturer and sells valves, fittings, water hydrants and other equipment for use in water and gas distribution systems; that Mueller Co. sells its products to stocking distributors, who in turn resell to utilities and water and gas system contractors; Mueller Co. also sells directly to water and gas system contractors and directly to publicly and privately owned water and gas utilities; that Mueller Co. sells its products to stocking distributors at its list price, less a discount generally of 25%. It also sells products to water and gas system contractors for sale on a spot or quote basis for each job on which a contractor may be interested in bidding. Prices quoted are dependent on quantities, type of material, transportation and other factors.

Since 1957, E. A. Weinel has been engaged in the business of contracting to install water distribution systems, and as a part of the construction business Weinel also began to sell small amounts of Mueller Co.'s products to end-use customers; the vast majority of the Mueller products purchased by Weinel was used by Weinel on his construction jobs; from 1957 to 1962, E. A. Weinel operated his business as a sole proprietorship. In 1962 the two plaintiff corporations were formed. E. A. Weinel is president of both; his wife, Catherine Weinel, is secretary-treasurer of both. E. A. Wei-

nel is the sole shareholder in both. Weinel was classified as a stocking distributor for Mueller Co. and was given the corresponding discount. He also received contractors' quotations for use in water and gas system construction jobs. The stocking distributor price is generally lower than the price quoted to contractors.

In January 1964 Mueller Co. received complaints concerning the status awarded Weinel by Mueller Co., contending that Weinel should be listed as a contractor and not as a stocking distributor and that Weinel was using the distributor purchases to obtain unfair advantage over competing contractors. Mueller Co. investigated the complaint and determined that the charges were true and notified Weinel that it would no longer sell its product to him at the stocking distributor's discount but that it would continue to offer to sell products to him on the same quote basis as his competitor contractors. Thereafter, Weinel declined to purchase any more Mueller Co. products but instead chose to purchase and resell similar products of competing manufacturers in connection with the construction business and his sales.

Viewing the complaint in its entirety, the sole issue is whether or not the action of Mueller and Sidener in discontinuing or causing to be discontinued the Pipe and Valve status as a stocking distributor resulted in a violation of the anti-trust laws.

Every manufacturer has a natural and complete monopoly of his particular product, especially when sold under his own private brand or trade name. If he is engaged in a private business, he is free to exploit this monopoly by selling his product directly to the ultimate consumer or through one or more distributors or dealers, as he may deem most profitable to him. If he chooses to sell through distributors or dealers, he may exercise his own independent discretion as to the parties with whom he will deal. This is a common law right which the anti-trust laws have

not destroyed; and a refusal to deal becomes illegal only when it produces an unreasonable restraint of trade or a monopoly forbidden by the anti-trust laws. A manufacturer may prefer to deal with one person rather than another and may grant exclusive contracts in a particular territory; and absent contractual provisions, a dealer once appointed has no tenure nor right to a renewal of his contract. An exclusive agency or dealership necessarily involves a limited monopoly to sell the product of the manufacturer in the area covered by the exclusive agreement. Such limited monopolies are valid unless they are used to violate the anti-trust laws. They may not be used to extend the producers' monopoly into other fields, as for example financing; nor may they be used to establish market dominance and drive out the products of competitors; but the mere fact that an agreement necessarily gives the dealer a monopoly in handling the product of the particular manufacturer in a given area and thereby enables the dealer to dictate the price at which the products of that manufacturer may be sold in that area, subject to competition with the products of other manufacturers, does not condemn such agreements. The main purpose of the anti-trust laws is to protect the public from monopolies and restraint of trade. Schwing Motor Company v. Hudson Sales Corporation, 138 F.Supp. 899 (D.C.D.Md.1956).

"It has been repeatedly held that a single manufacturer has a right to select its customers and to refuse to sell its goods to any one, for reasons sufficient to itself. (Citing cases). A refusal to deal becomes illegal only when it produces an unreasonable restraint of trade or a monopoly forbidden by the antitrust laws. (Citing cases). A manufacturer has the right to develop its enterprise intelligently by promoting productive business relationships and channels of distribution, while abandoning those which are relatively barren." Miller Motors v. Ford Motor Company, 149 F.Supp. 790 (D.C.M.D.N.C.1957).

Here, there is no allegation or contention that an exclusive dealership is a part of or incidental to any conspiracy or agreement to monopolize or restrain trade between manufacturers or wholesale dealers. It is no violation of the anti-trust act. Schwing Motor Co. v. Hudson Sales Corp., 239 F.2d 176 (4th Cir., 1956).

A manufacturer has a right to select its customers and to refuse to sell its goods to anyone, for reasons sufficient to itself; and a refusal to deal becomes illegal under the Act only when it produces an unreasonable restraint of trade, such as price-fixing, elimination of competition or the creation of a monopoly; and the fact that a refusal to deal with a particular buyer, without more, may have an adverse effect upon the buyer's business does not make the refusal to deal a violation of the Sherman Act. Damage alone does not constitute liability under the Act. Unless it can be said that a refusal to deal had the result of suppressing competition and thus constituted "restraint of trade" within the meaning of Section 1 of the Sherman Act, there is no violation of the Act. It is well settled that "restraint of trade" referred to in Section 1 of the Act means only unreasonable restraint of trade, in that, as the cases point out, every commercial contract has some restraining effect upon trade, and the substitution of one distributor for another in a competitive market does not eliminate or materially diminish the existing competition of distributors of other like products and is not an unusual business procedure and is not an unreasonable restraint of trade. Ace Beer Distributors, Inc. v. Kohn, Inc., 318 F.2d 283 (6th Cir. 1963).

Only unreasonable restraints of trade are unlawful. When an exclusive dealership is not part and parcel of a scheme to monopolize and effective competition exists at both the seller and buyer levels, the arrangement has invariably been upheld as a reasonable restraint of trade. The fact that any other dealers in the

same product of the same manufacturer are eliminated does not make an exclusive dealership illegal; it is the essential nature of the arrangement. The fact that the exclusive dealer asked for the arrangement does not make it illegal. Since the immediate object of an exclusive dealership is to protect the dealer from competition in the manufacturer's product, it is likely to be the dealer who asks for it. Packard Motor Car Co. v. Webster Motor Car Co., 100 U.S.App.D. C. 161, 243 F.2d 418 (1957).

The particular sections of the Sherman Act involved are Sections 1 and 2 (Title 15, §§ 1 and 2), the pertinent parts of which are as follows:

Sec. 1 "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."

Sec. 2 "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor, * * *."

Under Section 4 of the Clayton Act (Section 15, Title 15 U.S.C.A.) any person who is injured in his business or property, by reason of anything forbidden in the anti-trust laws, may sue for damages in a District Court of the United States and recover threefold the damage sustained, together with costs and attorney fees.

Summary judgments have a place in the anti-trust field, as elsewhere, though they are not appropriate where motive and intent play leading roles. Some of the law in the area is so well developed that where the gist of the case turns on documentary evidence, the rule at times can be divined without a trial; as, for instance, where the sale of an unpatented product is tied to a patented article, that is a per se violation since it is a bald effort to enlarge the monopoly of the patent beyond its terms. Also, if competitors agree to divide markets, they can run afoul of the anti-trust laws. Group boycotts are another example of a per se violation. Price-fixing arrangements, both vertical and horizontal, have also been held to be per se violations of the anti-trust laws. White Motor Co. v. United States, 372 U.S. 253, 83 S.Ct. 696, 9 L.Ed.2d 738.

In opposition to the motion for judgment on the pleadings or summary judgment, plaintiffs cite and strongly rely on United States v. Sealy, Inc., 388 U.S. 350, 87 S.Ct. 1847, 18 L.Ed.2d 1238 (1967); United States v. Arnold, Schwinn & Co., 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967); and White Motor Co. v. United States, 372 U.S. 253, 83 S.Ct. 696 (1963); together with a number of other cases which the Court has considered. Each is clearly distinguishable on the factual situation presented and is not controlling.

By their amended complaint plaintiffs seek to invoke the anti-trust laws in support of their cause.

When looking at the bare bones of the complaint, E. A. Weinel Construction Co. complains that it is now unable to buy supplies from Pipe and Valve Supply Co. at its former price because Mueller Co. has refused to continue Pipe and Valve Supply Co. as a stocking distributor, while at the same time maintaining Sidener as a stocking distributor. Such an allegation in and of itself is insufficient to substantiate a claim under the provisions of the anti-trust laws. The complaint does not allege that there is any price-fixing arrangements between the defendants, nor does it allege that there is a monopoly in pipe and valve supplies and water hydrants generally. It does allege a monopoly in Mueller Co. products.

That plaintiff Pipe and Valve was discontinued as a stocking distributor while Sidener continued to act as a stocking distributor with the attendant discount

and that Pipe and Valve Supply Co. was discontinued as a distributor at the instance of Sidener (being the other stocking distributor of Mueller products in the area), somehow according to the plaintiffs brings into play the anti-trust laws.

All of the above-cited cases belie such a conclusion. Indeed, a manufacturer may select its distributors, and absent some other illegal conduct, no violation of the anti-trust laws occurs. There is no charge in the complaint that similar supplies of other manufacturers are not equally available to plaintiff or to other contractors in the area. Indeed, it appears that plaintiffs have in fact utilized the goods of other manufacturers in competition with Mueller Co. products. There is no allegation that there is any tying arrangements in Mueller's sales of products which would constitute a violation of the anti-trust laws. There is no price-fixing alleged. There is no monopoly alleged (except as to Mueller Co. products), and there is no substantial impact on interstate commerce alleged except as to Mueller Co.'s products, which in and of itself is insufficient to show a violation of the anti-trust laws.

Taking the complaint, answer and motion for judgment on the pleadings or summary judgment in their entirety, the Court finds that plaintiffs fail to set forth sufficient facts to substantiate a claim based on a violation of the anti-trust laws, since no such violation is shown.

For the foregoing reason, defendants Mueller Co., Sidener Supply and L. E. Sidener are entitled to judgment on the pleadings as against plaintiffs E. A. Weinel Construction Co. and Pipe and Valve Supply Co.

It is, therefore, the order of this Court that judgment on the pleadings be and the same is hereby entered for defendants Mueller Co., a corporation; Sidener Supply Company, a corporation; and L. E. Sidener, and against plaintiffs

E. A. Weinel Construction Co., a corporation, and Pipe and Valve Supply Co., a corporation, together with defendants' costs. Execution to issue.