**MDC DATA CENTERS, INC.**

**v.**

**INTERNATIONAL BUSINESS MACHINES CORPORATION.**

**Civ. A. No. 71-912.**

United States District Court,
E. D. Pennsylvania.

May 3, 1972.

H. Robert Fiebach, Philadelphia, Pa., for plaintiff.

K. Robert Conrad, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

MASTERSON, District Judge.

Early in 1970, MDC Data Centers, Inc. (MDC) leased certain equipment from International Business Machines Corporation (IBM) allegedly upon the latter's representation and warranty that these machines would successfully transmit computer data from remote (franchise) locations to MDC's main office in Cherry Hill, New Jersey, for analysis and then send appropriate information back to the remote location. Upon installation, however, the equipment failed to perform its assigned tasks. On several occasions engineers from IBM visited the Cherry Hill office to examine the new equipment. As a solution to these operational difficulties, IBM recommended that MDC accept the services of their Systems Engineering Department. However, IBM also informed MDC that this assistance would be forthcoming only upon the payment of an additional fee. In its opinion, MDC thought that no additional sum should be demanded because IBM's salesmen had allegedly represented to it that the new equipment could readily handle MDC's demand without any extensive engineering assistance. Unable or unwilling to pay an additional amount, MDC ordered IBM to remove its equipment and then sued IBM for the losses which it incurred in this aborted venture.

In its complaint, MDC sets forth four counts: (1) anti-trust premised upon an illegal tie with computer equipment as the tying product and engineering services as the tied item; (2) breach of contractual warranties; (3) negligent misrepresentation; and (4) fraudulent misrepresentations. Jurisdiction is premised upon a federal question (28 U.S.C. § 1331) and diversity of citizenship (28 U.S.C. § 1332).

Presently before this court is IBM's motion for partial summary judgment under Rule 56, F.R.Civ.P. In this motion, IBM challenges solely the viability of count one, MDC's anti-trust claim. Basically, IBM asserts that even accepting the facts as set forth by MDC in its complaint, as a matter of law, the latter has not established a tie-in arrangement proscribed by the anti-trust laws. For the following reasons, we agree.

### I.

Section 1 of the Sherman Act, 15 U.S.C. § 1 [1] forbids unreasonable tie-

---

[1] "Every contract, . . . or conspiracy, in restraint of trade or commerce among the several States, . . . is declared to be illegal . . . ."

ins involving goods and services.[2] See e. g., United States v. Jerrold Electronics Corporation, 187 F.Supp. 545 (E.D.Pa. 1960), aff'd., 365 U.S. 567, 81 S.Ct. 755, 5 L.Ed.2d 806 (1961) (per curiam). In order to establish such a tie-in arrangement, there must be a tying product or service and a tied product or service as well as a requirement imposed by the seller that the customer accept the less desirable tied item as a condition to obtaining or retaining the desired tying one. See United States v. Loew's, Inc., 371 U.S. 38, 83 S.Ct. 97, 9 L.Ed.2d 11 (1962); Times-Picayune Publishing Co. v. United States, 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277 (1953); Int'l. Salt Co. v. United States, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed 20 (1947). Tie-ins are an object of the anti-trust laws for two reasons; (1) "they may force buyers into giving up the purchase of substitutes for the tied product . . .," and (2) they may destroy the free access of competing supplies of the tied product to the consuming market." 371 U.S. at 45, 83 S.Ct. at 102. A tie-in becomes *unreasonable* when a "substantial amount" of commerce is involved and the seller has "sufficient economic power" because of the "unique and unusual" nature of the tying product to impose "burdensome terms such as a tie-in, with respect to any appreciable number of buyers within the market." Fortner Enterprises v. U. S. Steel, 394 U.S. 495, 504, 89 S.Ct. 1252, 1259, 22 L.Ed.2d 495 (1968). See United States v. Loew's Inc., supra, 371 U.S. at 45, 83 S.Ct. 97.

## II.

MDC's entire anti-trust claim is contained in two paragraphs of the complaint which read as follows:

"12. Defendant refused, however, to correct the equipment without further additional payments by plaintiff to defendant. Defendant offered to plaintiff for an additional fee its systems engineering services and it was represented by defendant to plaintiff, for the first time after the lease and installation of the equipment, that only with the aid of defendant's systems engineering services could plaintiff expect the system to be operable.

"13. Plaintiff believes and, therefore, avers that defendant's improper tieing in of its engineering services to the equipment rental is an abuse of monopoly power and is an illegal tie in, all in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1 and 2 and Section 3 of the Clayton Act of 1914, 15 U.S.C.A. § 14."

To decide this case, we need not even reach the issue of whether a substantial amount of commerce and economic power are involved because we believe that MDC has simply failed (as a matter of law) to allege a tie-in arrangement.

IBM argues that no tie-in is alleged because there was no mention of any service requirement until *after* the computers had been delivered and installed, and therefore, logically it cannot be said that IBM *conditioned* rental of its equipment (the alleged tying and desirable product) upon acceptance of IBM's engineering services (the alleged tied and undesirable service). This argument, however, ignores the realities of the situation, and we reject it. For anti-trust purposes, supplying an inoperable product which becomes useful *only* upon acceptance of another product or service from the same seller can amount to an unlawful tie-in.

But it does not necessarily follow from this conclusion that the relationship in this case constitutes a tie-in. That depends, in the first instance, upon whether IBM threatened to remove its equipment if MDC contracted to employ someone else's service engineers in order to get the system operating. In other words, the crucial fact under the anti-trust laws is not whether IBM forced MDC to purchase someone's engineering services, but whether IBM forced MDC to purchase *its* (IBM's) services *rather*

---

2. Section 3 of the Clayton Act, 15 U.S.C. § 14 is inapplicable because by its terms, it concerns only "goods, wares, merchandise, machinery, supplies or other commodities." In short, the Clayton Act does not cover services.

*than those of a competitor.* Yet nowhere in the complaint, its brief or at oral argument has plaintiff alleged that IBM threatened to remove its equipment if MDC dared to employ a competing firm to service the system. Compare Siegel v. Chicken Delight, Inc., 448 F.2d 43 (9th Cir. 1971); Advance Business Systems & Supply Co. v. SCM Corporation, 415 F.2d 55 (4th Cir. 1969), cert. denied, 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 101 (1970); American M'frs. M. I. Co. v. American Broadcasting—Para. Theatres, 388 F.2d 272 (2nd Cir. 1967). Without such an allegation, we hold that the complaint fails to state an anti-trust claim under Section 1 of the Sherman Act.

We add two final observations. Examination of the depositions and other documents in this case leads us to believe that if IBM "forced" *its* service upon MDC, it may have been because IBM alone could successfully service its own unique equipment. If so, then there was no unlawful tie-in under the Sherman Act, not because a single product was involved (as urged by IBM), but because the transaction did not impose any restraint on trade since, by definition, no competitor existed from whom MDC could purchase the necessary services.[3] Cf. Standard Oil Co. of California v. United States, 337 U.S. 293, 69 S.Ct. 1051, 93 L.Ed. 1371 (1949).

Finally, we are particularly sensitive to the Supreme Court's admonition in Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) that summary judgment should be granted sparingly in anti-trust litigation. Because of the complexity of this case and the elusiveness of the precise claim that plaintiff has attempted to assert, we will grant MDC twenty (20) days in which to amend its complaint to state, if it can, a claim cognizable under the anti-trust laws.

---

3. Likewise, by definition there would be no competitor closed out of the market by IBM's actions.