**Paul J. BOGOSIAN, Plaintiff,**

v.

**GULF OIL CORPORATION et al.,
Defendants.**

**Louis J. PARISI, Plaintiff,**

v.

**GULF OIL CORPORATION et al.,
Defendants.**

**Civ. A. Nos. 71–1137, 71–2543.**

United States District Court,
E. D. Pennsylvania.

April 15, 1975.

---

David Berger, Warren D. Mulloy, Bruce K. Cohen, Warren Rubin, David Berger, P.A., Philadelphia, Pa., Harold Brown, Brown & Leighton, Boston, Mass., for plaintiff.

Benjamin M. Quigg, Jr., Morgan, Lewis & Bockius, Stephen W. Armstrong, Philadelphia, Pa., John H. Chiles, David D. Sigman, Houston, Tex., H. Francis DeLone, Dechert, Price & Rhoads, Richard G. Schneider, Robert C. Heim, Philadelphia, Pa., C. Lansing Hays, Jr., Hays, Landsman & Head, New York City, John T. Clary, Philadelphia, Pa., William Simon, Howrey, Simon, Baker & Murchison, Keith E. Pugh, Jr., William R. O'Brien, Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER

VanARTSDALEN, District Judge.

These are private antitrust actions [1] brought under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26. The lawsuits, since their inception in 1971, have been refined so that they are premised solely upon an alleged illegal tie-in under § 1 of the Sherman Act,[2] 15 U.S.C. § 1. Plaintiffs contend that the defendants, major oil companies,

> as landowner-lessors impose illegal tie-in agreements in the leasing of their respective service stations by re-

[1] These are two separate and independent actions which have not been formally consolidated for trial but are being treated together for purposes of discovery and pretrial motions.

[2] Claims involving real estate monopoly and the tying of TBA products have been abandoned.

quiring the lessees to buy and sell only the gasoline supplied by their respective lessors.

Bogosian v. Gulf Oil Corp., 62 F.R.D. 124, 127 (E.D.Pa.1973).

Paul J. Bogosian operated a Gulf station as lessee of the Gulf Oil Corporation and Louis J. Parisi operated an Exxon station as lessee of Exxon Corporation. Plaintiffs originally sought to proceed as representatives of a nationwide class of service station dealers who leased stations from any of the oil company defendants. On December 19, 1973, this court denied class certification, 62 F.R.D. 124 (E.D.Pa.1973), and plaintiffs have proceeded against the named defendants, other than their respective lessors, solely under a theory that all defendants acted "through a course of interdependent consciously parallel action." [Amended Complaints ¶ 14].

■ For plaintiffs to succeed against those defendants who are not their lessors, it must be shown that the defendants acted in concert. The Sherman Act § 1 requires a "contract, combination . . . or conspiracy, in restraint of trade."[3] While as between Bogosian, the lessee, and Gulf, the lessor, a contract exists—as between Bogosian and Getty, Shell or Exxon the same relationship does not exist.[4] Consequently, a "contract, combination or conspiracy" must be shown by another means, to come within the statutory confines of the Sherman Act § 1.

In the instant action the plaintiffs do not presently allege either a contract or a conspiracy. Instead they contend that

"interdependent consciously parallel action" satisfies the Sherman Act § 1 requirement of concerted action.[5]

■ Presently before the court are motions for summary judgment against both Bogosian and Parisi by Getty, Shell and Exxon. At the outset, it should be noted that antitrust litigation is not usually suited to summary disposition. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). This is due to the complexity of the factual issues especially as they may reflect motive or intent. Norfolk Monument Co., Inc. v. Woodlawn Memorial Gardens, Inc., 394 U.S. 700, 89 S.Ct. 1391, 22 L.Ed.2d 658 (1969); Moore v. Jas. H. Matthews & Co., 473 F.2d 328 (9th Cir. 1973); Minnesota Bearing Co. v. White Motor Corp., 470 F.2d 1323 (8th Cir. 1973); Booth Bottling Co., Inc. v. Beverages International, Inc., 361 F.Supp. 340 (E.D. Pa.1973); MDC Data Centers, Inc. v. International Business Machines Corp., 342 F.Supp. 502 (E.D.Pa.1972).

## GETTY AND SHELL

Getty and Shell moved for summary judgment under the following theories:

(1) The complaints are not sufficient to state a cause of action under Sherman Act § 1 against Getty and Shell as non-suppliers since no "conspiracy" is alleged.

(2) Plaintiffs lack standing under § 4 Clayton Act, since in their depositions, plaintiffs individually state that Getty and Shell did not injure them personally in any way.

---

3. It is hornbook law that individual action does not violate Sherman Act § 1. The statute clearly requires concerted action in the form of a contract, combination or conspiracy in restraint of trade. As an example, this concerted action could take the form of a vertical tie-in contract between a buyer and seller or a horizontal combination or conspiracy among competitors. Thus, as between a lessor and lessee a contract would exist. But where this relationship does not exist, concerted action must be shown another way—such as through an agreement among suppliers or lessors.

4. As for Parisi, the lessee, a contract exists with Exxon, the lessor, while as with Getty and Shell no such relationship exists.

5. This is hardly accidental. Messrs. Brown and Berger are experienced and learned attorneys in the field of antitrust litigation. Rather than inadvertence, the use of "interdependent conscious parallelism" is a deliberately employed strategy.

(3) Plaintiffs lack standing under § 16 Clayton Act, because they do not face an imminent threat of harm from Getty and Shell.

■ The Supreme Court has recognized that a Sherman Act § 1 conspiracy may be proven without a formal agreement. Interstate Circuit, Inc. v. United States, 306 U.S. 208, 59 S.Ct. 467, 83 L. Ed. 610 (1939). As a consequence courts have looked to the conduct of the defendants, which would be sufficient to prove the conspiracy. United States v. General Motors Corp., 384 U.S. 127, 143, 86 S.Ct. 1321, 16 L.Ed.2d 415 (1966); United States v. Singer Mfg. Co., 374 U.S. 174, 193, 83 S.Ct. 1773, 10 L.Ed.2d 823 (1963); United States v. Parke, Davis & Co., 362 U.S. 29, 44, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960); Theatre Enterprises, Inc. v. Paramount Film Distributing Corp., 346 U.S. 537, 541, 74 S. Ct. 257, 98 L.Ed. 273 (1954); American Tobacco Co. v. United States, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946); Delaware Valley Marine Supply Co. v. American Tobacco Co., 297 F.2d 199, 202 (3d Cir. 1961); William Goldman Theatres v. Loew's, Inc., 150 F.2d 738, 743 (3d Cir. 1945); Todhunter-Mitchell & Co., Ltd. v. Anheuser-Busch, Inc., 375 F.Supp. 610, 622 (E.D. Pa.1974); Overseas Motors, Inc. v. Import Motors Limited, Inc., 375 F.Supp. 499, 531 (E.D.Mich.1974); A. P. Hopkins v. Studebaker Corp., Onan Div., 355 F.Supp. 816, 826–27 (E.D.Mich.1973), aff'd, 496 F.2d 969 (6th Cir. 1974); Fiumara v. Texaco, Inc., 204 F.Supp. 544, 548 (E.D.Pa.), aff'd, 310 F.2d 737 (3d Cir. 1962).

■ The courts, however, have repeatedly held that mere conscious parallelism, *viz.*, knowingly engaging in parallel business activity by and among competitors, standing alone, is insufficient to support a conspiracy allegation under Sherman Act, § 1. Theatre Enterprises v. Paramount Film Distributing Corp., *supra* at 541, 74 S.Ct. 257; Klein v. American Luggage Works, Inc., 323 F.2d 787, 791 (3d Cir. 1963); Delaware Valley Marine Supply Co. v. American Tobacco Co., *supra*; Lawlor v. National Screen Service Corp., 270 F.2d 146, 155 (3d Cir. 1959); Overseas Motors, Inc. v. Import Motors, Ltd., Inc., *supra* at 531.

■■ Plaintiffs contend that interdependent consciously parallel action is different from mere conscious parallel action and supports a Sherman Act § 1 cause of action under the doctrine of Wall Products Co. v. National Gypsum Co., 326 F.Supp. 295 (N.D.Cal.1971).

> Rather than merely alleging "conscious parallelism" as defendants seem to infer, the complaints allege significantly more. The complete phrase utilized by plaintiffs is "interdependent consciously parallel action," (paragraph 14), which obviously is not the same as mere "conscious parallelism."

Plaintiffs "Supplemental Memorandum Sur Summary Judgment", p. 1–2. Plaintiffs further assert that summary judgment should not be granted since additional discovery is required, and have so moved under Rule 56(f), Fed.R. Civ.P. Because the complaint fails, as a matter of law, to state a cause of action under Sherman Act § 1 against Getty and Shell, summary judgment will be granted[6] and plaintiffs' Rule 56(f) motion will be denied.

---

**6.** Summary judgment will be granted solely on a question of law. No facts are in dispute. The caveats of *Poller, supra* at 473; *viz.*, difficulty in proof of conspiracy, motive or intent are inapplicable. *Cf.*, White Motor Co. v. United States, 372 U.S. 253, 83 S.Ct. 696, 9 L.Ed.2d 738 (1963); Goldinger v. Boron Oil Co., 375 F.Supp. 400, 412 (W.D.Pa. 1974); Cal.Distributing Co. v. Bay Distributors, Inc., 337 F.Supp. 1154, 1161 (M.D. Fla.1971); Record Club of America, Inc., v. Columbia Broadcasting System, Inc., 310 F. Supp. 1241, 1245–46 (E.D.Pa.1970). Not only is it proper to use summary judgment to resolve questions of law, National Bank of Commerce of San Antonio v. United States, 369 F.Supp. 990 (W.D.Tex.1973), aff'd, 491 F.2d 1271 (5th Cir. 1974), but courts should not flinch from their duty to decide a legal issue on summary judgment

The sole issue to be determined is whether an allegation of "interdependent consciously parallel action" in a complaint is an adequate allegation of a "contract combination or conspiracy" as required by Sherman Act § 1.[7] Conscious parallelism usually arises in the context of sufficiency of the evidence in a Sherman Act § 1 trial in which a conspiracy or combination[8] had been alleged. The focus is whether evidence of conspiracy from proof of conscious parallelism together with all other evidence is adequate to support a factual finding of a conspiracy. In the instant case, however, the focus is quite different— whether pleading no more than interdependent consciously parallel action is sufficient to support a claim under Sherman Act § 1 which requires concerted action in the form of a contract, combination or conspiracy. A complaint with broad and virtually conclusory allegations of conspiracy could be sufficient at this stage of proceedings. Cf., Brett v. First Federal Savings and Loan Ass'n., 461 F.2d 1155, 1158 (5th Cir. 1972). Because mere conscious parallelism cannot sustain a Sherman Act § 1 violation, a fortiori, the use of that phrase in a pleading without more is insufficient. The critical factor is that Sherman Act § 1 requires concerted ac-

tion. Certainly, this is not to suggest a revival of the "magic words" and shibboleths of common law pleading[9] "when the slightest deviation from the recognized formula was fatal." 3 T. Street, The Foundations of Legal Liability, 26 (1906). Fed.R.Civ.P. 1 mandates an enlightened approach to pleadings. However, it is beyond question that a plaintiff must set out a cause of action in a complaint.[10] A plaintiff is not deprived of a day in federal court merely because of nomenclature. In the instant case the plaintiffs have deliberately chosen to place all of their "concerted action" claims under the the the rubric of "interdependent consciously parallel action" and this phrase fails to satisfy the Sherman Act § 1.

Plaintiffs rely most heavily on Wall Products v. National Gypsum, supra, for the proposition that evidence of interdependent consciously parallel action is sufficient to support a Sherman Act § 1 claim.[11] Wall Products was a private antitrust action which alleged price fixing. The court was faced with a situation wherein the major manufacturers of wallboard followed the actions of their competitor, United States Gypsum (USG) which had withdrawn all price exceptions. It had been the practice of the major producers in the wallboard in-

---

simply because as here, the legal issue may be difficult or uncertain. Housing Authority of Omaha, Neb. v. United States Housing Authority, 54 F.R.D. 402, 404 (D.Neb.1972), rev'd on other grounds, 468 F.2d 1 (8th Cir. 1972), cert. denied, 410 U.S. 927, 93 S.Ct. 1360, 35 L.Ed.2d 588 (1973) ; Perfect Photo Inc. v. Sentiff, 205 F.Supp. 574, 575 (E.D. Pa.1962).

7. It is arguable that the standing issues are threshold questions and should be answered first. However, I find that these theories propounded by Getty and Shell would not justify summary judgment. I do not consider the deposition testimony of plaintiffs concerning a conclusion of law to be dispositive. Moreover, plaintiffs would not be expected to understand the legal ramifications or even be aware of the activities of the defendants which may have injured them. Their deposition testimony, therefore, to the effect that they were "not harmed in any way" or they

had "no complaint" against Getty or Shell is inconclusive.

8. Hereafter when concerted action in the form of conspiracy or combination is referred to, only the word conspiracy will be used.

9. See 5 Wright and Miller, Federal Practice and Procedure § 1202.

10. Fed.R.Civ.P. 8(a)(2).

11. Plaintiffs have also cited Moore v. Matthews & Co., supra, a case involving both tying and parallelism. Moore is distinguishable. In that case defendants engaged in a tie-in as a response to an invitation to conspire. Thus the invitation to conspire and the response to so engage in a tie-in supported a Sherman Act § 1 violation without regard to interdependent conscious parallelism.

dustry to publish a price list but to make exceptions to meet price competition which was usually engendered by smaller, single plant producers of wallboard. In order to stop this downward price mechanism, USG decided upon a six point program; (1) stop discounting wallboard, (2) sell only at the published list price, (3) announce this in the Wall Street Journal, (4) ignore competition from single plant producers, (5) centralize price authority—not delegate authority to except prices, (6) determine existing commitments to sell at lower than list and fulfill only those.

Because wallboard is fungible with virtually no differences between brands, USG realized that its plan would succeed if, and only if, the other major producers embarked upon a similar strategy. USG computed that it would realize a gross loss of $8.8 million due to customer dissatisfaction which would be offset by a gross gain of $10.6 million due to the checking of price erosion for a net gain of $1.8 million. Any net gain would be contingent upon all the major competitors following the lead of USG. If only USG pursued a policy of no price exceptions, the market structure was such that its customers would buy elsewhere. The projected loss of $8.8 million would, therefore, be the bare minimum. The crucial factor for success, then, was interdependent parallel action by competitors. If these were the only facts in *Wall Products* in which a Sherman Act § 1 violation was found, then that opinion and the term interdependent consciously parallel action would have great significance. Such is not the case. When USG announced its policy, it did not make a public announcement in the *Wall Street Journal* and much

more critically the public announcement, it did make, did not include these two crucial factors—ignoring competition from single plant producers and centralizing pricing authority. The court found that single plant producers of wallboard had necessitated the price exception policy. Thus, ignoring price competition from the single plant products was the *sine qua non* of the policy. The policies of the other major producers all contained these two unannounced, but essential factors. This anomaly alone could have furnished sufficient evidence to support a finding that some understanding existed between the major producers. Moreover, there was evidence that USG actually had talks concerning price exceptions with other major producers—National Gypsum and Kaiser Industries.[12] Thus, while Judge Zirpoli's language did seem to indicate that proof of interdependent conscious parallelism, without anything more, could be sufficient evidence to support a Sherman Act § 1 violation,[13] in *Wall Products*, a classic Sherman Act § 1 combination, contract or conspiracy could be found without resorting to interdependent conscious parallel action.

While interdependent conscious parallel action was not necessary to establish a Sherman Act § 1 violation in the factual setting of *Wall Products,* the policy and rationale behind that concept warrants discussion. Judge Zirpoli made this statement.

In an industry composed of few sellers of a homogeneous product, when the major competitive sellers engage in policies and practices which have for their objective the stopping of declining prices and deviations from terms of sale and when those policies and

---

12. In the opinion, Judge Zirpoli alludes to this fact although he does so in the converse:

> While there is circumstantial evidence from which one might infer that National had such advance notice, [of the USG price exception policy], failure to establish such advance notice is not fatal to plaintiffs'

claim that defendants were actively participating in an agreement or conspiracy to fix or stabilize prices. [citation omitted]. 326 F.Supp. at 316.

13. "[S]uch interdependent conscious parallel action *may well* constitute a tacit understanding . . . .."
326 F.Supp. at 316. (emphasis added).

practices are parallel in detail . . . and are so interdependent that adherence thereto on the part of *all* such major competitors is essential to the achievement of their objective, such interdependent conscious parallel action may well constitute a tacit understanding by "acquiescence . . . coupled with assistance" to effectuate a price fixing agreement. [citation omitted].

326 F.Supp. at 316.

Judge Zirpoli reasoned that interdependence was the critical factor in *Wall Products*. He explicitly found more "than mere conscious parallelism."

In American Tobacco Co. v. United States, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946), the Supreme Court upheld a finding of a Sherman Act § 1 violation from a factual pattern which outwardly resembled interdependent conscious parallelism. Commencing in 1932, R. J. Reynolds (RJR) increased prices for one of its products, Camel cigarettes. These increases were invariably matched by RJR's major competitors, American Tobacco Company (ATC) and Liggett and Myers (L&M) for their brands which were similar to Camels. Because these increases took place in the midst of the great national depression of the 1930's, it is obvious that an increase by RJR would have been disastrous to it if ATC and/or L&M had undercut Camels by not matching the increases. Thus, interdependence was a crucial factor for the success of RJR's price increases. The tobacco companies countered the allegations of a conspiracy with the explanation that advertising expenses had increased thus necessitating any price increase. However, *American Tobacco* contained more than interdependent conscious parallelism. The court considered two other factors which were evidence of an illegal agreement. Not only had the defendants increased their prices simultaneously but they also attempted to monopolize[14] by lowering prices at a later date to drive out the less expensive brands produced by smaller competitors. In addition there was evidence that defendants were purchasing tobacco for each other.

The issue then becomes whether interdependence is sufficient to support a Sherman Act § 1 claim. In its usual context conscious parallelism or interdependent conscious parallelism is circumstantial evidence of conspiracy. While interdependent conscious parallelism may often be based upon agreement, such business behavior may be the result of rational individual decisions of competitors.[15] The latter, if without any agreement, is not actionable.

While both *American Tobacco* and *Wall Products* contain an element of interdependent conscious parallelism, it is not the interdependence alone which converts mere conscious parallelism to a Sherman Act § 1 conspiracy. Rather, interdependence is merely additional circumstantial evidence or indicia of an agreement. Conscious parallelism has become a shorthand term for parallel business behavior where a Sherman Act § 1 violation is attempted to be proven without benefit of a formal agreement. It is not necessary to burden the language of antitrust law with another nonoperational term; *viz.*, interdepen-

---

14. Of course, monopolization is a separate violation under Section 2 of the Sherman Act. 15 U.S.C. § 2. However, the fact that prices were later lowered by the defendants is another factor of circumstantial evidence pointing toward a conspiracy. Unlike a price increase, a price decrease could not be explained away by the increased cost of advertising expenses.

15. Turner, The Definition of Agreement Under the Sherman Act: Conscious Parallelism and Refusals to Deal, 75 Harv.L.Rev. 655 663–73 (1962).

dent consciously parallel action.[16] Instead, it is sufficient for the present analysis to state that I have found no decision, reported or otherwise, which held that Sherman Act § 1 violation existed from facts which showed nothing more than parallel business behavior among competitors even where interdependence was necessary. Interdependence may add an important factor to parallel business behavior, but it alone is not dispositive of concerted action. Since the course of conduct alleged by plaintiffs is in and of itself insufficient to prove a Sherman Act § 1 violation, such an allegation standing alone is insufficient to state a claim.

■ In summary, my ruling is that a pleading alleging nothing more than interdependent consciously parallel action among competitors is an insufficient allegation of a "contract, combination or conspiracy" under a cause of action based on a violation of the Sherman Act, § 1.

## EXXON

Exxon has moved for summary judgment against both Parisi and Bogosian. The motion will be granted as to the Bogosian action for the reasons stated *supra* on the Getty and Shell motions since Exxon is not the lessor of Bogosian. As to the Parisi action, the motion will be denied.

Exxon has a two pronged attack in the Parisi motion:

(1) Parisi's claim against the defendant oil companies is based solely on a theory of concerted action; *viz.*, interdependent consciously parallel action. There are no individual claims by the plaintiff against an individual defendant. Because the theory under which the concerted action claim is brought is insufficient as a matter of law under Sherman Act § 1, there is no claim against Exxon.

(2) Parisi in his own deposition states that he was not compelled to buy Exxon gasoline—the alleged tied product, and he was not unhappy with Exxon gasoline.

Because I have held that as a matter of law the allegation of interdependent consciously parallel action in a complaint is insufficient to state a Sherman Act § 1 cause of action, the only issue left under Exxon's first theory is whether Parisi stated an individual claim against his lessor, Exxon. At the hearing on the class action motion on January 12, 1973, Mr. Berger made the following statement:

We are streamlining the cases in respect to the nature of the claim and the description of the class.

The single, solitary claim in this class action is as follows: The defendant franchisors acting in concert have maintained a uniform policy of requiring all those who lease, sublease or renew such leases or sublease of defendants' service station to do the following things:

First, to license the use of defendant's trademark.

Second, to sell only the defendant's gasoline.

Third, not to sell gasoline purchased from any other source under that trade name.

Fourth, to purchase all such gasoline at prices unilaterally and subjectively determined by the defendant franchisors from time to time.

That, Your Honor is our claim. All other claims, including those involving

16. Because antitrust litigation is complex, it requires an appreciation of economics as well as a thoughtful application of the facts to the law. In this vein, it is dangerous to resort to labels and phrases as a substitute for analysis. It is not "conscious parallelism" and the addition of the word "interdependent" to that phrase which is meaningful. Rather, a factual analysis of cases is mandated. A useful opinion which has attempted to deal with facts and issues is Overseas Motors Co. v. Import Motors, Ltd., Inc., *supra*.

real estate monopoly and TBA products are abandoned.

(N.T. 32–33).

From this, Exxon argues that Parisi's sole claim is based upon concerted action. Using Mr. Berger's own words: "The single, solitary claim . . . is . . . the defendant franchisors acting in concert . . . . That, your honor is our claim . . . all other claims . . . are abandoned", it could be contended that any individual claims were abandoned in favor of claims of concerted action. Such an interpretation, however, belies a fair reading of Mr. Berger's statement.[17]

Moreover, the actual amended complaint of May 21, 1973 clearly sets out an individual claim against Exxon. Relevant portions of the allegations of the complaint are as follows:

4. From July 1968 until June 1971, plaintiff operated an Exxon gasoline service station at Oxford Circle and Roosevelt Boulevard, Philadelphia, Pennsylvania, under a series of service station leases and contracts of sale with Exxon Corporation which were effective for time periods ranging from six months to usually no longer than one year.

5. Through the contracts and leases, the plaintiff was required to sell only gasoline bought from his defendant lessor, Exxon Corporation.

6. Upon information and belief, plaintiff alleges that the practice described in paragraphs 4 and 5 substantially represents and is typical of the general business practice of each of the named defendants with each of its lessee-dealers in the plaintiff class as described below.

\* \* \* \* \* \*

11. Defendants are engaged in a national market and transport and sell petroleum products in interstate commerce.

12. Defendants have established lessee-dealerships by the use of the conditional lease methods described in paragraphs 4 and 5 herein. The defendants' leasing of service station sites, together with physical improvements, tanks and pumps, is conditioned upon the signing of contracts of sale or other contractual provisions for the exclusive purchase and sale of the lessor's brand of gasoline. The lease is usually for a short period of time, and in most cases does not exceed one year. Lessee-dealers are supervised by District Managers and are personally supervised by Sales Representatives.

13. For many years past, the exact date being presently unknown to plaintiff, but at least as early as 1957, and continuing to the present, defendants, through a course of interdependent consciously parallel action, have required all dealers who lease, sublease, or renew such leases or subleases for one or more of defendants' service stations to:

(a) license the use of the lessor's trademark;

(b) sell only the lessor's gasoline; and

(c) not sell gasoline purchased from any other source under the licensed trademark.

14. The leasing practices of the defendants, individually and collectively, through interdependent consciously parallel actions, as aforesaid, including the use of short-term leases, leases based on contracts for the sale of lessor's brand of gasoline and other contractual arrangements, have enabled the defendants to compel the lessee-dealers to purchase the lessor's brand of gasoline and not to purchase any other brand of gasoline for resale.

15. With the vast economic power and control possessed by the defend-

---

17. The concerted action claim, in any case, encompasses an individual claim. *Cf.*, Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 142, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968).

ants individually and collectively over the leasing of service station sites, defendants have used the said tying practices substantially to restrain free competition in the market for the sale and purchase of gasoline by retail service station outlets. A substantial amount of interstate commerce has thereby been affected.

16. The unlawful acts of defendants as aforesaid constitute an unreasonable combination in restraint of interstate trade and commerce in the marketing of gasoline in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

■■■■■ As to its second theory, Exxon contends that Parisi's deposition testimony contradicts the requirements of Capital Temporaries, Inc. of Hartford v. Olsten Corp., 506 F.2d 658 (2d Cir. 1974), that the victim of a tie-in be compelled to purchase the unwanted tied product. Exxon has read too much into *Olsten*. Even the quoted portion of the opinion in Exxon's brief (page 16) makes this clear.

> [B]efore the plaintiff can become entitled to the benefit of the per se doctrine, and thereby escape the proof otherwise required to establish an undue or unreasonable restraint under the rule of reason approach, it is basic that he first establish that he is an

unwilling purchaser of an unwanted product.

*Olsten, supra* at 662.

Thus, if Parisi chooses not to rely on the *per se* rule,[18] but instead upon the rule of reason, *Olsten* has no application.

The compulsion requirement of *Olsten* is merely evidence of the economic power of the tying product. By showing the victim of a tie-in to be the "unwilling purchaser of an unwanted product," the argument can be made that the economic power of the tying product enables it to restrain competition in the market of the tied products. The Supreme Court made clear in Fortner Enterprises, Inc. v. United States Steel Corp., 394 U.S. 495, 500–503, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969), that it only becomes necessary to show that the tying product has sufficient economic power to restrain free competition in the tied product and affects a not insubstantial amount of commerce if the plaintiff seeks to benefit from the *per se* rule. Thus, as *Fortner* held, it is inappropriate to grant summary judgment if the plaintiff merely fails to allege facts which, if proved would bring into operation the *"per se* rule." Moreover there are material facts in dispute which may establish the economic power necessary under the *per se* rule through compulsion.[19] In

---

18. If the plaintiff can show that the tying product has sufficient economic power to restrain free competition in the tied product and affects a not insubstantial amount of commerce, then the tie-in will be presumed illegal without an elaborate inquiry into the precise harm caused. Fortner Enterprises, Inc. v. United States Steel Corp., *infra* at 498–99, 89 S.Ct. 1252; Northern Pacific R. Co. v. United States, 356 U.S. 1, 5–6, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958); International Salt Co. v. United States, 332 U.S. 392, 396, 68 S.Ct. 12, 92 L.Ed. 20 (1947). On the other hand, if the plaintiff cannot meet the requirements for the *per se* rule, the case can still be decided under the rule of reason. Using the latter course, inquiry is made under the general standards of the Sherman Act with a thorough examination into the purposes and effects of the practices involved. *Fortner, supra* at 500, 89 S.Ct.

1252. To be successful under the rule of reason the plaintiff must prove that the complained of practices are an *unreasonable* restraint on commerce and consequently have an anticompetitive effect. *See, e. g.,* United States v. Arnold, Schwinn & Co., 388 U.S. 365, 368, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967); Northern Pacific R. Co. v. United States, *supra* at 5–6, 78 S.Ct. 514; Worthen Bank & Trust Co. v. National Bank Americard, Inc., 485 F.2d 119, 125–26 (8th Cir. 1973).

19. Exxon has alluded to passages in the depositions where Parisi stated that he did not attempt to buy gasoline elsewhere. From this Exxon assumes that neither was Parisi compelled nor Exxon gasoline unwanted. Such an inference of noncompulsion flies in the face of Parisi's statement that he was afraid of repercussions.

any event, Parisi would still be free to prove his case under the rule of reason.

### ORDER

And now, this 15th day of April 1975, the motions for summary judgments by defendants Getty, Shell and Exxon are granted.

It is determined that the granting of summary judgment in favor of Getty, Shell and Exxon is a final judgment and that no just reason exists for delay in this matter.

Therefore, it is certified under 28 U. S.C. § 1291 and Rule 54(b), Fed.R.Civ. P., that this is a final judgment as between the plaintiff and defendants Getty, Shell and Exxon.

I wouldn't be around. I wouldn't be there long if I did that [attempt to purchase non Exxon gasoline for his station].
Parisi deposition p. 144.

If Parisi feared losing his station by purchasing gasoline other than Exxon, then coercion is manifest. *Cf.* United States v. Arnold, Schwinn & Co., 388 U.S. 365, 372, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967).