564 F.Supp. 1507 (1983)
ALLSTATE INDUSTRIES, General Roofing Co., Ralph J. Meyer Company, Miller Thomas Gyekis, Inc., Stringert & Bowers, Warren Ehret Linck Company and Lingenfelter Roofing Company, Plaintiffs,
v.
UNITED UNION OF ROOFERS, WATERPROOFERS AND ALLIED WORKERS' ASSOCIATION, LOCAL NO. 37, AFL-CIO, Mak-Lyn, Inc., Defendants.
Civ. A. No. 81-2129.
United States District Court, W.D. Pennsylvania.
June 8, 1983.
*1508 R.H. Shoop, R.I. Thomas, R.R. Riese, Thorp, Reed & Armstrong, Pittsburgh, Pa., for plaintiffs.
Paul Titus, Jon Hogue, Estelle Comay, Titus, Marcus & Shapira, Pittsburgh, Pa., for Mak-Lyn.
Gary L. Goldberg, Pittsburgh, Pa., for Local 37.

MEMORANDUM OPINION
MENCER, District Judge.
Seven corporations[1] located in Western Pennsylvania, and in that general area and *1509 the surrounding states engaged in roofing work, brought this lawsuit against United Union of Roofers, Waterproofers and Allied Workers' Association, Local No. 37, AFL-CIO, Mak-Lyn, Inc., and Greenlands, Inc.[2]
Defendant United Union of Roofers, Waterproofers and Allied Workers' Association, Local No. 37, AFL-CIO (hereinafter Local 37) is a labor organization that counts among its members roofers employed by both the seven plaintiff employers and defendant Mak-Lyn, Inc. Mak-Lyn, Inc. (hereinafter Mak-Lyn) is also a corporation engaged in roofing work in Western Pennsylvania.
The plaintiffs allege in Count One that the defendants here "conspired, agreed and combined, ... to grant certain economic advantages to defendant employers" and to intentionally withhold the same from plaintiffs. The gravamen of Count One is that although defendant Mak-Lyn and the seven plaintiffs have both signed collective bargaining agreements with Local 37, the Union has consistently enforced the provisions of the collective bargaining agreement vis a vis the plaintiffs, but has intentionally not enforced certain provisions with respect to Mak-Lyn.
This practice, it is alleged, is the result of concerted activity on behalf of Local 37 and Mak-Lyn, and constitutes a restraint of trade in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. Count One also alleges a violation of Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, in the sense that it is claimed that the "agreements, conspiracies and combinations" were entered into with the purpose and intent of monopolizing the market of roofers in Western Pennsylvania.
Count Two is a claim for tortious interference with plaintiffs' business, jurisdiction of that claim is asserted under the doctrine of pendent jurisdiction.
Local 37's answer denies that it failed to enforce any provision of the collective bargaining agreement with respect to Mak-Lyn. Alternatively, Local 37 asserts that if it is found that they did not enforce a particular provision, such conduct was caused not by any agreement or conspiracy, but simply as a unilateral decision based upon its own interest. Thus, Local 37 denies any Sherman Antitrust violation. Local 37 also raises the defense of statutory exemption from antitrust liability for labor unions contained in Section 6 of the Clayton Act, 15 U.S.C. § 17, and § 20 of the Clayton Act, 29 U.S.C. § 52 and the Norris-LaGuardia Act, 29 U.S.C. §§ 101-115. (See Answer of Local 37, p. 12.)
Local 37 also asserts that if an agreement between itself and Mak-Lyn is found, it is still exempt from antitrust liability as a result of labor's non-statutory exemption as stated by the Supreme Court in Connell Construction Co., Inc. v. Local Union No. 100, 421 U.S. 616, 95 S.Ct. 1830, 44 L.Ed.2d 418 (1975).
Defendant Mak-Lyn denies liability in much the same manner as Local 37, but also counterclaims against the seven plaintiffs claiming that by being members of the Roofing Contractors Association of Western Pennsylvania, Inc., the seven have engaged in conduct that violates Section 1 of the Sherman Act.
Excluding Local 37, therefore, we have seven corporations engaged in the business of roofing construction on one side and on the opposite side one corporation engaged in the same business, each side alleging antitrust violations against the other.
The case is presently before the Court to decide cross-motions for summary judgments.
Both defendants are moving for summary judgment of the entire complaint. Plaintiffs have moved for summary judgment on the liability issue of Count One only, and, for summary judgment with respect to Mak-Lyn's counterclaim. All sides have briefed the respective issues.
The facts, insofar as need be discussed, are as follows:
*1510 Each of the seven plaintiffs are members of the Roofing Contractors Association of Western Pennsylvania, Inc. (hereinafter Roofing Contractors Association). They each have taken part in multi-employer bargaining with Local 37. The plaintiffs are, through the Association, currently parties to a collective bargaining agreement between the Association and Local 37.
As stated in Article I of the collective bargaining agreement (hereinafter Agreement), its purpose is to define wages and working conditions, prescribe means for the prevention of strikes, lockouts, or other stoppages of work, and otherwise stabilize operations in the composition roofing, damp and waterproofing industries in Western Pennsylvania. (Agreement Art. I.)
The Roofing Construction Association and Local 37 signed the collective bargaining agreements with three-year terms ending May 31, 1979, May 31, 1982 and May 31, 1985.
Defendant Mak-Lyn incorporated in May of 1977. Mr. Kusenko is president and sole shareholder of Mak-Lyn. Mr. Kusenko, as president of Mak-Lyn, testified that he signed a collective bargaining agreement with Local 37 in May of 1977. This was the same agreement then in effect between the Roofing Contractors Association and Local 37.
When that agreement terminated, both the Roofing Contractors Association and Mak-Lyn executed identical agreements with Local 37 running until May 31, 1982.
The essence of the plaintiffs' complaint is based upon a two-fold argument. First, Mak-Lyn did not comply with various provisions of its collective bargaining agreement with Local 37. Second, Local 37 did not enforce these alleged violations. This state of affairs, it is claimed, could not have occurred in the absence of concerted action, conspiracy, or some secret side agreement between the defendants, any of which is a violation of the Sherman Antitrust Act.
Our discussion of the applicable law begins with the standards for summary judgment motions. It is beyond dispute that a federal court will grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Under this standard, a court must view all evidence and inferences in a posture most favorable to the party opposing the motion. Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1975); Goclowski v. Penn Central Transportation Company, 571 F.2d 747 (3rd Cir.1977). Where cross-motions for summary judgment are submitted, as here, the Court is not to assume that there are no issues of material fact, but must make an independent determination based upon the proof submitted by the parties. 10 Wright and Miller, Federal Practice and Procedure § 2720 (1973). See McDougall v. Donovan, 552 F.Supp. 1206 (N.D.Ill.1982).
In addition to these time-honored requirements, antitrust litigation usually requires special considerations. The Supreme Court has stated that summary judgment "should be used sparingly in complex antitrust litigation where motive and intent play leading roles." Poller v. Columbia Broadcasting System, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). However, this is not to state that a court shall not enter a summary judgment order, where appropriate.
Section 1 of the Sherman Act provides, in pertinent part: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."
Section 2 of the Sherman Act provides, in pertinent part: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor ..."
In order to prove a violation of Section 1 of the Sherman Act, the plaintiffs must establish the existence of concerted action between two or more parties in restraint of *1511 trade or commerce. Edward J. Sweeney & Sons, Inc. v. Texaco, 637 F.2d 105 (3rd Cir. 1980). See also Bogosian v. Gulf Oil Corp., 561 F.2d 434 (3rd Cir.1975), cert. denied, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978), and the discussion contained therein at 445-46.
The Third Circuit has clearly stated that to meet this burden, plaintiff must submit evidence from which a jury could infer that defendants had a conscious commitment to a common scheme designed to achieve an unlawful purpose. Klein v. American Luggage Works, Inc., 323 F.2d 787 (3rd Cir. 1963).
However, direct proof of an express agreement is not necessary to fulfill this burden. Indeed common experience evinces the understanding that this is hardly, if ever, the case. The oft quoted words have much relevance in the present context. "The picture of a conspiracy as a meeting by twilight of a trio of sinister persons with pointed hats close together belongs to a darker age." William Goldman Theatres v. Loew's Inc., 150 F.2d 738 (3rd Cir.1945).
Nevertheless, plaintiffs do have the burden of producing enough evidence from which the factfinder (here the jury) can find illegal concerted action from making reasonable inferences and not simply speculation. See Venzie Corp. v. United States Mineral Prod. Co. Inc., 521 F.2d 1309 (3rd Cir.1975).
With all of the above principles in mind, together with the appropriate standard for summary judgment, we consider the present case.
The evidence in this case clearly indicates that plaintiffs will have to rely on circumstantial evidence and reasonable inferences drawn therefrom to establish, if they are able, a violation of Section 1. Michael Kusenko, president of Mak-Lyn, stated in his deposition that the only agreements his company has reached with Local 37 were the two collective bargaining agreements identical to the ones plaintiffs executed with the Union. Nicholas Jackson, the business representative of Local 37, also testified similarly, expressly denying the existence of any other agreement between Mak-Lyn and Local 37.
Robert Stringert, an active member of the Roofing Contractors Association of Western Pennsylvania, and the individual who started one of the plaintiff corporations herein, and Stringert & Bowers also testified that they were not aware of any written document containing an agreement of this kind between Mak-Lyn and Local 37. None of the other parties, either through deposition testimony or any other discovery device produced direct evidence of an express agreement between Mak-Lyn and Local 37.
Mr. Stringert capsulized the theory behind the plaintiffs' lawsuit at one point in his testimony:
"Q. How is it then that you see from that a conspiracy, agreement or combination with the Union and Mak-Lyn?
A. Well, there is the contract, and everybody else has to abide by it. If the man is signed by the same contract then he should abide by the same contract and the rules and regulations. If he doesn't, then there is an understanding or a conspiracy between the man that runs Local 37 and the man that is doing the work that he doesn't have to abide by these rules and regulations. He has special privileges."
Paragraph 20 of the complaint alleges that Local 37 and Mak-Lyn conspired in the sense that Local 37 would not enforce certain provisions of the collective bargaining agreement against Mak-Lyn, including travel time, overtime pay rates, transportation requirements and manning requirements.
Paragraph 23 of the complaint alleges that as a result of this illegal concerted action, Mak-Lyn was able to successfully underbid the seven plaintiffs for roofing work and have, therefore, obtained contracts which would probably have been awarded to one of the plaintiffs.
Michael Kusenko, president of Mak-Lyn, admitted during the course of his deposition that Mak-Lyn did not comply with certain provisions of the collective bargaining *1512 agreement.[3] Since, however, plaintiffs have not produced any direct evidence of an express illegal agreement between defendants, they must satisfy their burden as noted above.
Plaintiffs rely, to satisfy their burden, on the various violations of the collective bargaining agreement by Mak-Lyn which, to a large extent, are not denied by the latter. Plaintiffs argue that from the fact that Mak-Lyn has not abided by certain provisions of the collective bargaining agreement, and that for one reason or another, Local 37 has not enforced these violations, a jury could reasonably infer that there is a tacit understanding or agreement between the two in violation of the antitrust laws.
We cannot agree. We therefore conclude that there is insufficient evidence from which a jury could reasonably infer that there is a conspiracy between Local 37 and Mak-Lyn in violation of Sections 1 and 2 of the Sherman Antitrust Act. We also note that a Section 2 claim for monopolization "requires a showing of a specific intent to monopolize and sufficient power to come dangerously close to success." Joseph Ciccone & Sons v. Eastern Industries, Inc., 559 F.Supp. 671 (E.D.Pa.1983), citing Harold Friedman, Inc. v. Kroger Co., 581 F.2d 1068 (3rd Cir.1978). There is no proof with regard to this claim.
The Court thus grants both defendants motion for summary judgment and denies plaintiffs' motion for summary judgment on liability for Count I.
We feel that all of the evidence of record, even when viewed in a light most favorable to plaintiffs, is insufficient, as a matter of law, to meet their burden of proving conspiracy. In so deciding, we are not unmindful of the difficulty that exists in proving an antitrust conspiracy. See Delaware Valley Marine Sup. Co. v. American Tobacco Co., 297 F.2d 199 (3rd Cir.1961) and discussion commencing at 202. We do not say that the level of circumstantial evidence can never rise to be sufficient to allow a reasonable inference to be drawn in cases such as these. We merely hold that the evidence before us in the present case fails to meet this level.
Defendants claim that any violations of the collective bargaining agreement by Mak-Lyn, and any failure of Local 37 to enforce these violations, were the result of unilateral acts taken on behalf of both entities in regard to their own best interests. (They advance this argument without, of course, admitting the charges alleged.)
In analysing this contention, we find no showing of any motivation for Local 37 to conspire with Mak-Lyn (and/or Greenlands) against the seven plaintiffs. If there is no evidence, or insufficient evidence, demonstrating how there would be a benefit for Local 37 to conspire with Mak-Lyn in the manner alleged, an inference of such conspiracy does not reasonably follow from the evidence which indicates that Mak-Lyn violated several provisions of the collective bargaining agreement. See Venzie Corp. v. *1513 United States Mineral Prod. Co. Inc., 521 F.2d 1309 (3rd Cir.1975).
Since the Court has determined that the record fails to reveal concerted action on behalf of defendant Mak-Lyn and Local 37, and has granted summary judgment for the respective defendants on that, we do not consider the validity of the final position raised by defendants, to-wit, that the allegations raised in the complaint are exempted from antitrust liability under either the statutory labor exemption or the "non-statutory" exemption.
This does not complete the record in this case. Defendant Mak-Lyn has counterclaimed against the plaintiffs, claiming that it is they who have committed antitrust violations and that the instant lawsuit was filed to coerce Mak-Lyn into becoming part of the conspiracy.
Plaintiffs have moved for summary judgment of this counterclaim. For the following reasons we shall grant plaintiffs' motion. The record is devoid of any evidence, direct or other, of any attempt by the seven plaintiffs to conspire together to violate Section 1 of the Sherman Act. While it is true that the seven plaintiffs are all members of the Roofing Contractors Association, the evidence indicates that they each bid independently for jobs. The contracts are awarded, presumably, to the lowest bidder. There is no evidence from which a jury could reasonably infer that a conspiracy existed against Mak-Lyn.
Mak-Lyn also claims, although it is not clearly alleged, that the lawsuit was brought in bad faith. After reviewing the record, including numerous deposition testimony, we decline to so hold. We do not feel that the record demonstrates any objective other than to petition for relief from grievance which the plaintiffs, in good faith, assert against Local 37 and Mak-Lyn.
In Mak-Lyn pretrial narrative, they also claim as damages all moneys "wrongfully required to pay into the Roofing Industry Promotion Fund" since 1977. This relief is not clearly alleged in Mak-Lyn's pleading, but we enter judgment for the plaintiffs on this issue for the reason that this allegation is not directed at the proper entity and is therefore not properly in this litigation at all.
Finally, the Court passes no judgment with respect to Count II of the complaint, as it is hereby dismissed, sua sponte, for lack of subject matter jurisdiction.
NOTES
[1] The seven named plaintiffs are as follows: Allstate Industries (hereinafter Allstate); General Roofing Co. (hereinafter General); Ralph J. Meyer Company (hereinafter Meyer); Miller Thomas Gyekis, Inc. (hereinafter Gyekis); Stringert & Bowers (hereinafter Stringert); Warren Ehret Linck Company (hereinafter Linck); and Lingenfelter Roofing Company (hereinafter Lingenfelter).
[2] The case against defendant Greenlands, Inc. was voluntarily dismissed by an oral dismissal at a pretrial conference on February 23, 1983.
[3] Mr. Kusenko stated that Mak-Lyn did not comply totally with Article X, Section (3) of the Agreement which requires that

Room and board shall be paid on out-of-town jobs exceeding sixty-five (65) miles, in and out of Local No. 37 geographical coverage of this Agreement. On out-of-town jobs travel time to the job site shall start at departure time from the Court House in which the shop is located and also from job site to such Court House.
According to Mr. Kusenko, Mak-Lyn paid room and board "in accordance with the contract with the exception of the Johnstown office." Mr. Kusenko also stated that, on occasion, Mak-Lyn did not pay its workers room and board and travel time and overtime, all of which were in violation of the contract.
Mr. Kusenko admitted that Mak-Lyn has never complied with Article XXXIV of the collective bargaining agreement which requires employers to report to the Union all jobs contracted within five days of the signing of a contract. Mr. Kusenko specifically admitted that Mak-Lyn failed to pay its employees room, board and travel pay for the Warnaco job and the Richland High School job. The testimony of Mr. Jackson is somewhat ambiguous on the issue of whether or not Mak-Lyn was required to make these payments, under the contract for the Warnaco job, but we will assume, for the purposes of this motion, that Mak-Lyn was in violation concerning both the Warnaco job and the Richland High School job.